# EXHIBIT A

Law Offices of
SHABEL & DeNITTIS, P.C.
5 Greentree Centre, Suite 302
Route 73 South & Lincoln Drive
Marlton, New Jersey 08053
(856) 797-9951
Attorneys for Plaintiffs

| | |
|---|---|
| DAVID SPECTOR and HENRY ANDERSON, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CHERRY HILL TOWNSHIP <br><br> Defendant | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION <br> CAMDEN COUNTY <br><br> DOCKET NO: L-3935-12 <br><br><br><br> CLASS ACTION COMPLAINT |

## INTRODUCTION

1. This is a class action brought on behalf of a New Jersey class challenging Cherry Hill Township's ("Cherry Hill") uniform policy of operating an unlawful red light camera monitoring system at a time when Cherry Hill was legally ineligible to operate such a system due to its failure to comply with the mandatory statutory requirements imposed to operate such a system in New Jersey, as well as its issuance of violation notices, and its collection of fines, based the operation of a red light camera monitoring system during this period of ineligibility.

2. This action raises claims under 42 U.S.C. § 1983, unjust enrichment and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq.

3. This action also seeks injunctive and declaratory relief, including an order establishing a court-

1

supervised program to carry out an audit and refunds to class members victimized by this uniform

policy.

## THE PARTIES

4. Plaintiff David Specter resides in Voorhees, Camden County, New Jersey. Like all other class members, he was issued a violation notice by Defendant during the class period based on Defendant's operation of a red light camera system at the intersection of Springdale Road and Route 70 and he paid a $85 fine to Defendant based on that violation notice during the class period.

5. Plaintiff Henry Anderson resides in Marlton, Burlington County, New Jersey. Like all other class members, he was issued a violation notice by Defendant during the class period based on Defendant's operation of a red light camera system at the intersection of Springdale Road and Route 70 and he paid a $85 fine to Defendant based on that violation notice during the class period.

6. Defendant Cherry Hill Township is a municipality organized under the laws and constitution of the State of New Jersey.

## THE UNIFORM COURSE OF CONDUCT ABD POLICY WHICH GIVES RISE TO THE CLASS CLAIMS

7. On January 13, 2008, the New Jersey Assembly Bill 4314 was signed into law establishing a five-year pilot program authorizing the installation and utilization of traffic control signal monitoring systems (hereafter "red light camera") in New Jersey.

8. A red light camera is an integrated system utilizing a camera, or multiple cameras, and vehicle sensors which work in conjunction with a traffic control signal to produce images of

2

vehicles disregarding a red signal or "running a red light."

9. N.J.S.A. 39:4-8.14(a), the statute authorizing this 5 year pilot program, expressly required each municipality wishing to participate in the program to file an application with the New Jersey Department of Transportation ("NJ DOT") which included certain mandatory information including:

> "(1) The intersection or intersections in the municipality at which it is desired to install and utilize a traffic control signal monitoring system;
>
> (2) Data which indicate that the intersection or intersections in question have a high number of violations of the traffic control signals, and any additional safety data the municipality deems appropriate;
>
> (3) A certification by the municipal engineer that (a) the intersection or intersections in question have a minimum duration of the amber light at the traffic control signal of three seconds if at least 85 percent of the vehicular traffic approaching the signal is traveling at a speed of 25 miles per hour or less; and (b) for each five mile increase in the speed of vehicular traffic referred to in subparagraph (a) of this paragraph above 30 miles per hour this minimum duration of the amber light shall be increased by one-half second;"

10. Specifically, under N.J.S.A. 39:4-8.14(a)(3), each municipality must submit a certification to NJ DOT, averring that each intersection with a red light camera system in that municipality has a yellow light interval that lasts at least 3 seconds if 85% percent of the traffic approaching that signal is traveling at a speed of 25 miles per hour or less; and that if 85% of the traffic for the signal approaches the intersection at speeds greater than 30 miles per hour, the yellow light period is at least one-half second longer for each five miles an hour over 30 miles per hour.

11. In explaining these yellow light interval requirements, the NJ DOT has issued a set of written guidelines, contained in the "NJDOT Design Manual—Roadway Traffic Signal Design" which states at 12-6:

3

> "The NJDOT rule for calculating the yellow change interval is:
>
> One second for every 10 miles per hour (minimum of 3 seconds).
>
> For speeds above 30 mph, the yellow time must be rounded upward.
>
> EXAMPLES:        35MPH=4 seconds yellow
>
> 45MPH= 5 seconds yellow
>
> 55MPH= 6 seconds yellow"

12. In addition, the statute approving the use of red light cameras in participating municipalities mandates that, after a municipality is admitted into the program, each red light camera system in each municipality be inspected at least every six months by the municipal engineer and that the municipality must submit a report of such inspection at least every six months. See N.J.S.A. 39:4-8.14(e):

> "A traffic control signal monitoring system **shall be inspected and certified at least once every six months by the municipal engineer from the date of its installation for the duration of the five-year pilot program prescribed by P.L.2007, c.348 (C.39:4-8.12 et seq.).**"(emphasis added)

13. The language of N.J.S.A. 39:4-8.14(e) vests no discretion with anyone to waive compliance with this requirement, expressly using the mandatory language "**shall be shall be inspected and certified at least once every six months**" in setting forth this requirement.

14. Defendant Cherry Hill Township submitted its application to NJ DOT to participate in the pilot program in early 2009 and began participating in that program on or about March 16, 2009 with a single red light camera system operating at the intersection of Springdale Road and Route 70, with cameras facing all four directions of this four way intersection.

15. Upon information and belief, regardless of the content of its application to NJ DOT,

4

Cherry Hill Township did not, in fact, conduct the traffic study mandated by N.J.S.A. 39:4-8.14(a)(3) to determine the average speed at which 85% of motorists approached these intersections.

16. Moreover, even if Cherry Hill Township did conduct such a study, the traffic control signal monitoring system in Cherry Hill at the intersection of Springdale Road and Route 70 does not, in actuality, comply with the minimum statutory yellow light period requirements mandated by N.J.S.A. 39:4-8.14(a)(3) and the actual yellow light periods for this intersection are shorter than the statutory minimum and have been since this red light camera system was established.

17. The average motorist speed of 85% of drivers approaching the Cherry Hill red light camera system facing the east and west bound lanes of Route 70 at the Springdale Road intersection is in excess of the posted 45 mile per hour speed limit and in fact exceeds 50 miles per hour.

18. N.J.S.A. 39:4-8.14(a)(3) does not expressly key the timing of the mandatory yellow light interval for red light camera systems based on the posted speed limit, but rather this provision requires the mandatory statutory yellow light period to be based on a study of the actual speed at which 85% of traffic actually approaches the traffic light.

19. However, even accepting the 45 mile per hour posted speed limit at the point where Route 70 crosses Springdale Road as the correct measure for the yellow light interval mandated by N.J.S.A. 39:4-8.14(a)(3), the yellow light interval at Cherry Hill's red light camera system on Route 70 fails to comply with the minimum statutory yellow light interval for an area where 85% of traffic approaches the intersection at 45 miles per hour and is less than 4.5 seconds.

20. In the case of Cherry Hill's red light camera system facing the north and south

5

bound lanes of Springdale Road at the same intersection, the yellow light interval also fails to meet the mandatory statutory minimum set by N.J.S.A. 39:4-8.14(a)(3).

21. Over 85% of the traffic on Springdale Road approaches the intersection at 40 miles per hour or greater.

22. The posted speed limit at this point is 40 miles per hour.

23. Even accepting 40 miles per hour as the correct measure for the calculation mandated by N.J.S.A. 39:4-8.14(a)(3), Cherry Hill's red light camera system facing the north and south bound lanes of Springdale Road fail to provide the mandatory statutory yellow light interval of at least 4 seconds.

24. Moreover, separate and apart from all of the foregoing, Cherry Hill Township has not complied with the mandatory statutory requirement of N.J.S.A. 39:4-8.14(e) that each municipality "shall" conduct an inspection of each red light camera system in the municipality at least once every six months and "shall" submit a report on such inspection at least once every six months.

25. Defendant Cherry Hill Township has not, in fact, conducted such an inspection and certification of Cherry Hill's red light camera system every six months, in direct violation of the authorizing statute.

26. Defendant has not complied with these requirements for at least a year and, upon information and belief, the period of non-compliance with N.J.S.A. 39:4-8.14(e) may go back to September 16, 2009.

27. Indeed, on June 19, 2012, NJ DOT suspended 19 New Jersey townships---including Cherry Hill Township--- from the pilot red light camera program for failure to conduct the statutorily mandated inspections every six months, and for failure to submit the statutorily

6

mandated certifications of such inspections every six months.

28. The stated reason given by the NJ DOT is its concern that the yellow light interval for red light camera systems in these municipalities may not be timed to meet the statutory requirements for such systems.

29. In the NJ DOT press release announcing these suspensions, NJ DOT stated:

> **"NJDOT follows the legally required engineering and safety standards in the Manual on Uniform Traffic Control Devices, which requires a minimum duration of the yellow light to equal one- tenth of the posted speed limit on the approaching road. This is a safety standard designed to provide motorists with sufficient time to respond to the yellow light and prevent collisions.**
>
> **For example, where the approaching road has a posted speed of 40 miles per hour, the signal must display yellow for a minimum of four seconds. NJ DOT rounds to the nearest whole second, so in stances where the approaching speed limit is 45 miles per hour, the signal displays a yellow light for five seconds."**

30. None of the yellow light intervals for Cherry Hill's traffic control signal monitoring system at the intersection of Route 70 and Springdale Road---which coincidentally have posted speeds of 45 and 40 miles per hour respectively---meets these mandatory minimum standards.

31. Thus, even NJ DOT has now formally recognized that Cherry Hill Township's failure to conduct the bi-annual inspection of its red light camera system has rendered it legally ineligible to operate a red light camera traffic control signal monitoring system in New Jersey.

32. Despite this, Cherry Hill Township has not refunded any of the $85 fines it collected from over 17,500 persons who were issued violation notices by Defendant based on Cherry Hill's red light camera system at the intersection of Route 70 and Springdale Road during the period when Cherry Hill was ineligible to operate such a system due its failure to comply with N.J.S.A. 39:4-8.14(e)'s mandatory bi-annual inspection and certification requirements.

7

33. Indeed, Cherry Hill is apparently currently attempting to lift the NJ DOT suspension order against it by <u>now</u> conducting an inspection of its red light camera system--- out of time--- and by certifying its compliance--- again outside the time specifically mandated by the authorizing statute--- with the statutory requirements.

34. <u>N.J.S.A</u>. 39:4-8.14(e), however, very clearly states that to be legally eligible to operate a red light camera system in New Jersey, a municipality has to inspect its system <u>every six months</u> and submit a certification as to the results of that inspection <u>every six months</u>.

35. No provision of the statute vest any person or entity with discretion to waive these mandatory eligibility requirements or to extend the six month time periods spelled out in <u>N.J.S.A</u>. 39:4-8.14(e).

36. Nor does any provision of the statute authorize a municipality to retroactively cure a violation of <u>N.J.S.A</u>. 39:4-8.14(e) by conducting a future inspection beyond the mandatory six month period spelled out in the statute.

37. Thus, regardless of what Cherry Hill does <u>in the future</u> to attempt to comply with <u>N.J.S.A</u>. 39:4-8.14(e) in the future, the simple fact is that it is undisputed that Cherry Hill <u>did not</u> meet the minimum statutory six month inspection and certification requirements for a considerable period of time in the past.

38. Thus, whatever Cherry Hill does <u>now</u>, it was legally ineligible under New Jersey state law to run a red light camera system in the past during that period when it was in violation of <u>N.J.S.A</u>. 39:4-8.14(e), and was thus Defendant was ineligible to issue violation notices and collect fines based on such a non-compliant system during that period in the past.

39. Cherry Hill must therefore refund the fines it illegally collected in the past during that period when it was not statutorily eligible to impose them and expurge the records of the

8

affected drivers for the period when Cherry Hill was not statutorily eligible to issue such violations.

## CLASS ACTION ALLEGATIONS

40. Plaintiffs bring this action as a class action pursuant to R. 4:32, on behalf of a class defined as:

> **All persons who paid an $85 fine to Cherry Hill for a violation of N.J.S.A. 39:4:81, Failure to Observe Signal, where the violation notice was issued between September 16, 2009 and the present, and was based on the red light camera system maintained by Cherry Hill Township at the intersection of Springdale Road and Route 70.**

41. Plaintiffs also bring this action as a class action pursuant to R. 4:32, on behalf of a sub-class defined as:

> **All persons who paid an $85 fine to Cherry Hill for a violation of N.J.S.A. 39:4:81, Failure to Observe Signal, where the violation notice was issued between March 16, 2011 and the present, and was based on the red light camera system maintained by Cherry Hill Township at the intersection of Springdale Road and Route 70.**

42. The class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

43. The exact number and identities of the persons who fit within the proposed class are contained in Defendant's records and can be easily ascertained from those records.

44. Based upon newspaper reports, the number exceeds 10,000 persons.

45. The claims in this action arise exclusively from the uniform conduct and municipal policy as alleged herein.

46. No violations alleged are a result of any oral communications or individualized interaction between any class member and Defendant.

9

47. There are common questions of law and fact affecting the rights of the class members, including, inter alia, the following:

a. whether the yellow light interval on Cherry Hill's red light camera system at the intersection of Route 70 and Springdale Road meets the statutory requirements spelled out in N.J.S.A. 39:4-8.14(a)(3);

b. whether Cherry Hill complied with the requirements of N.J.S.A. 39:4-8.14(e) by conducting an inspection of red light camera system at the intersection of Route 70 and Springdale Road every six months during the class period, and submitting a certification for each such inspection to NJ DOT every six months during the class period, as required by N.J.S.A. 39:4-8.14(e);

c. whether Cherry Hill's failure to comply with the mandatory six month inspection and certification requirements of N.J.S.A. 39:4-8.14 (e) rendered it ineligible to maintain a red light camera system during that period of non-compliance;

d. whether Cherry Hill's failure to comply with the mandatory inspection and certification requirements of N.J.S.A. 39:4-8.14(e) for a given period of time in the past can be retroactively cured by conducting an inspection and submitting a certification outside the time period mandated by N.J.S.A. 39:4-8.14(e);

e. whether the class is entitled to a court-supervised program of audits and refunds to relating to those $85 collected by Cherry Hill during any period in which it was found ineligible to maintain a red light camera system in New Jersey.

48. Plaintiffs are members of the classes they seek to represent in that on July 20, 2011 Plaintiff Anderson, and on May 11, 2012 Plaintiff Specter, were issued N.J.S.A. 39:4:81 violation notices by Cherry Hill, based on its red light camera system located at the intersection of Springdale Road and Route 70, and they were each charged and paid a $85 fine to Cherry Hill based on that violation notice.

49. The claims of Plaintiffs are not only typical of all class members, they are identical in that they arise from the uniform conduct, municipal policy and statutory authority as all other class members, and his claims are based on the same legal theories of all class members.

50. Plaintiffs have no interest antagonistic to, or in conflict with, the class.

51. Plaintiffs will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent themsleves and the class.

52. Defendant has acted and refused to act on grounds generally applicable to the class, thereby making appropriate injunctive and declaratory relief for the class as a whole.

53. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

54. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, inter alia, the damages suffered by each class member were less than $100 per person and individual actions to recoup such an amount are not economically feasible.

55. Common questions will predominate, and there will be no unusual manageability issues

11

63. Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fourteenth Amendment.

64. The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits.

65. Property interests are not created by the Constitution.

66. Rather, they are created, and their dimensions are defined, by existing rules or understandings that stem from an independent source such as state law rules that secure certain benefits and that support claims of entitlement to those benefits.

67. In the case at bar, N.J.S.A. 39:4-8.14 is an independent source of certain benefits and property rights that support claims of entitled to those benefits and property rights.

68. The Due Process Clause of the Fourteenth Amendment protects against governmental deprivations of life, liberty, or property without due process of law.

69. The extraction of a monetary fine implicates the Due Process Clause of the Fourteenth Amendment to the United States Constitution even when only a small amount has been taken.

70. Thus, at a minimum, Plaintiffs and the class have a property interest in the $85 monetary fines sought and assessed against them by Defendant, which were based on Defendant's operation of an unlawful red light camera system during the class period.

71. Accordingly, Plaintiffs and the class were entitled to the constitutional protections of procedural due process in this case and were deprived of that due process by the acts and omission alleged herein.

## COUNT TWO

## UNJUST ENRICHMENT/DISGORGEMENT

72. Plaintiffs incorporate all preceding paragraphs as though fully set forth at length herein.

73. By the acts alleged herein, Cherry Hill Township received a benefit from Plaintiffs and the class in the form of $85 fines imposed on and collected from each class member in the manner alleged herein.

74. The retention of that benefit by Defendant would be unjust because the amounts were collected in a manner that violated state and federal law, as outlined herein.

75. By the facts alleged herein, equity demands that Defendant disgorge itself of this benefit and that the benefit be returned to Plaintiffs and the class.

## COUNT THREE

## NEW JERSEY CIVIL RIGHTS ACT, N.J.S.A. 10:6-1 et seq.

76. Plaintiffs incorporate all preceding paragraphs as though fully set forth at length herein.

77. By the acts alleged herein, Plaintiffs and the class have been deprived of substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, and/or substantive rights, privileges or immunities secured by the Constitution or laws of New Jersey, and have had their exercise and enjoyment of those substantive rights, privileges or immunities interfered with by a person acting under color of law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this court to:

a. Certify the proposed class as a class action pursuant to R 4:32;

b. Enter an order for injunctive and declaratory relief as described herein;

c. Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

d. Award Plaintiffs reasonable attorneys' fees and costs;

e. Award Plaintiffs and the class actual damages;

f. Grant such other and further legal and equitable relief as the court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues so triable.


SHABEL & DENITTIS, P.C.

BY: _____
Stephen P. DeNittis, Esq.
Joseph A. Osefchen, Esq.

Dated: June 29, 2012


## CERTIFICATION PURSUANT TO R. 4:5-1

To the best of Plaintiffs' knowledge, the matter in controversy is not related to any pending action. No arbitration proceeding is pending or contemplated. There are no other parties known to Plaintiffs at this time who should be joined in this action.

15

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Stephen DeNittis is designated as trial counsel.

SHABEL & DENITTIS, P.C.

BY: _____
Stephen P. DeNittis, Esq.
Joseph A. Osefcher, Esq.

Dated: June 29, 2012